## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM DIXON, | ) | Case No. 1:21-cv-01150 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | William H. Baughman, Jr. |
| DEBORAH HUNT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>OPINION AND ORDER</u>

On June 7, 2021, *pro se* plaintiff William Dixon, presently incarcerated at Toledo Correctional Institution ("ToCI"), filed this civil rights action under 42 U.S.C. § 1983 against twenty-one defendants: Deborah Hunt[1]; Judge Jeffrey J. Helmick; "Hamilton County Clerk"; "Judge Hamilton County"; D.J. Norris; Matt Gillum; "ODRC Director"; Investigator Elder; Investigator Brown; Uma Hernandez; Todd Friend; Warden Bowerman; "RIB Board"; Warden Harold May; Brandon Deskins; Devon Schultz; Angie Walton; Detective Ward; Judge A.J. Wagner; Elizabeth Scott; and Ward Barentine.  Plaintiff appears to seek the following: $1,000,000 "from each person" in damages; criminal charges against the defendants; "access to file in court his original appeal"; "all false opinions" removed or sealed; and the removal of all public official defendants from office.  (ECF. No. 1.)

---

[1] Plaintiff refers to Deborah Hunt as "Clerk Hunt."  Therefore, the Court presumes, based on the context of the complaint, that the defendant is Deborah S. Hunt, Clerk of Courts for the Sixth Circuit Court of Appeals.

## BACKGROUND

Plaintiff is no stranger to the federal courts.  Since his incarceration, he has filed several civil rights actions against his jailers, public officials, and various individuals connected to his criminal prosecution, challenging his arrest, prosecution, trial, conviction, sentence, and conditions of confinement.  *See, e.g., Dixon v. Mohr*, No. 1:12 CV 294 (S.D. Ohio Mar. 28, 2013) ("*Dixon I*"), *Dixon v. Mohr*, No. 3:15 CV 1999 (N.D. Ohio Dec. 29, 2015) (Zouhary, J.) ("*Dixon II*"), and *Dixon v. Coleman*, No. 3:17 CV 1476 (Helmick, J.) ("*Dixon III*").  Plaintiff raised many of the same claims in each action.  (*See Dixon III*, ECF. No. 38, at 6).  In at least one action, the Court designated Plaintiff a "restricted filer," requiring Plaintiff to seek leave of Court before filing additional pleadings or motions in that case.  (*Id.*, ECF No. 36, at 2.)

Plaintiff's forty-four-page complaint is rambling and difficult to decipher.  Construing the complaint liberally, however, it appears that the bulk of Plaintiff's claims against Defendants concern allegations of misconduct that occurred surrounding Plaintiff's arrest, prosecution, trial, and conviction in an Ohio court in 2006.  Plaintiff claims Defendants, "collectively . . . set up an innocent man." (ECF No. 1, at 4).  Plaintiff also appears to allege that Judge Helmick engaged in wrongdoing by issuing his opinion in *Dixon III* in 2020 and that the Hamilton County Clerk and judge violated his civil rights by failing to prosecute Defendant Hunt.  (*See id*. at 28.)  As best the Court can discern, it appears that Plaintiff also claims nearly all named Defendants acted criminally, and he wants them prosecuted for their actions.

Plaintiff's complaint is divided into two sections—"Memorandum" and "Issues." In his Memorandum, Plaintiff provides a chronology of events outlining the various alleged wrongs, which purportedly began in 2006 and continued to 2020. Plaintiff's "Issues" appear to include seventeen potential claims.

Plaintiff asserts his first claim against Ms. Hunt. He appears to allege that, while acting as the Sixth Circuit Court of Appeals Clerk of Court, she falsified and published records stating that Plaintiff "busted a drug cartel" in Belize. He claims this information was false and that Ms. Hunt's actions caused him harm. (*Id.* at 16–20.) Plaintiff appears to claim that Ms. Hunt's actions were somehow an attempt to prevent Plaintiff from filing an appeal. (*Id.*). As best the Court can discern, the complaint also appears to allege that Ms. Hunt should be criminally prosecuted for violating the following Ohio statutes: Section 2921.44 of the Ohio Revised Code (Dereliction of Duty); Section 2921.45 (Interfering with Civil Rights); Section 2921.32 (Obstruction); and Section 2913.42 (Tampering with Records).

According to the complaint, Plaintiff filed an action against Ms. Hunt in the Hamilton County Court of Common Pleas requesting her prosecution under these Ohio statutes, but that action "was already decided by [*Dixon v. Hunt*, No. 1:19 CV 338 (S.D. Ohio Feb. 18, 2020)]" ("*Dixon IV*"). In *Dixon IV*, Defendant removed the matter to federal court, but the Court ultimately dismissed the action and remanded the matter to the State Court. (*See Dixon IV*, ECF No. 14; *id.*, ECF No. 16.) According to Plaintiff, the State court then dismissed the action "without review." (ECF No. 1, at 17.) It appears that Plaintiff now wishes to revisit the issue in this action "to get

justice [because] Ms. Hunt violated laws [and] . . . because a civil action [under Section 1983] is the remedy when the court won't comply with the law."  (ECF. No. 1 at 16.)

In Plaintiff's first claim, he also alleges that Detective Ward and Brandon Deskins testified under oath that "there was no cartel, no drug bust, and Dixon was never kidnap[ped] in Belize" and that Angie Walton and Devon Schultz "cannot testify to Dixon being at a place . . . [when] they are not even there" and they "agreed to change their story."  (*Id.* at 24–27.)  It is not clear what claim Plaintiff attempts to assert through these allegations.

Plaintiff's second claim alleges that Judge Helmick "out of anger" placed "harmful information" in his opinion issued in *Dixon III*, including false information that Plaintiff worked as an informant, or a "snitch."  He claims that this action caused "criminals [to go] after him and his mom," caused the "ODRC staff" to "fail to protect" him, and ultimately caused the death of his mother because of "the stress and fear of everything."  (*Id.* at 11, 28.)  Plaintiff alleges that Judge Helmick violated his civil rights because he did not take his case seriously or that, at the very least, his "confusion of the record" constituted negligence.  (*Id.* at 30.)  He also appears to claim that Judge Helmick should be criminally prosecuted for violating Sections 2913.42, 2921.32, 2921.44, and 2921.45 of the Ohio Revised Code.  (*Id.* at 28.)

In his third and fourth claims, Plaintiff appears to allege that the Hamilton County Clerk and a judge in Hamilton County interfered with his civil rights by failing to file criminal charges against Ms. Hunt for her actions noted in his first claim. Plaintiff asserts that the Hamilton County Clerk and judge should be

criminally prosecuted under Sections 2921.44 and 2921.45 of the Ohio Revised Code for failing to file charges against Ms. Hunt and for failing to "properly process" his request under Section 2935.09 for criminal proceedings against her. (*Id.* at 32.)

Plaintiff asserts his fifth and sixth claims against D.J. Norris, Matt Gillum, Todd Friend, and "RIB Board." Plaintiff alleges that Norris, the STG (Security Threat Group) supervisor, "disregarded the truth," which led to the false identification of Plaintiff as a gang member; Gillum falsified Plaintiff's record and forced Plaintiff to sign an STG admission form; and Friend created a "fake file" that included false gang accusations, which ultimately resulted in the deprivation of Plaintiff's "possible release." Plaintiff also appears to claim that the RIB (Rules Infraction Board) used this "fake file" in a disciplinary hearing. Plaintiff claims that the conduct of these defendants constitutes violations of Sections 2913.42, 2921.32, 2921.44, and 2921.45 of the Ohio Revised Code, for which the defendants should be criminally prosecuted. (*Id.* at 33–34.)

In his seventh claim, Plaintiff alleges that Friend's actions constituted a violation of the Ohio statutes referenced above plus Section 2923.32 (Engaging in Pattern of Corrupt Activity) and that he should, therefore, be removed from office for "scandalous behavior." (*Id.* at 35.) Also, Plaintiff claims that Friend "was directly responsible for the failure to protect Dixon when Dixon was "almost killed at ManCI." (*Id.* at 36.) Plaintiff appears to allege that in ToCI in 2019, he reported threats to Hernandez, Bowerman, and STG, but Investigator Hobbs disregarded the threats against him. (*Id.*)

Plaintiff's eighth claim asserts that the Director of the Ohio Department of Rehabilitation and Correction ("ODRC") is responsible for the staff members' actions because he or she had knowledge of the various staff members' misconduct, including failing to protect, filing false records, denying access to the courts, and failing to provide medical care.  Plaintiff states that he is suing the Director because "no one knows which person directly acted . . . on the civil rights violation." (*Id.* at 37.)

Plaintiff combines claims nine through thirteen, asserting that Investigator Elder, Investigator Brown, Investigator Hobbs, Uma Hernandez, Warden Bowerman, and Warden May are responsible for the death of his mother.  Plaintiff appears to claim that Judge Helmick's January 2020 opinion caused other inmates "to go after" Plaintiff, and these defendants failed to properly investigate Plaintiff's claims; rather, they continued to "move [him] back to live around the inmates who set him up." Plaintiff appears to claim that the defendants' actions ultimately caused his mother's death.  He also appears to claim these defendants violated Sections 2913.42, 2921.32, 2921.44, 2921.45, and 2923.32 of the Ohio Revised Code, for which the defendants should be criminally prosecuted.  (*Id.* at 12–15 and 38–39.)

In his fourteenth claim, Plaintiff asserts that the RIB ignored evidence that Plaintiff is innocent and that it failed to "uphold proper conduct." (*Id.* at 40.)  Plaintiff appears to assert in his fifteenth claim that the ODRC Director is liable for the RIB's actions.  (*Id.* at 42.)

In his sixteenth claim, Plaintiff alleges that Warden May has Section 2921.44 and Section 2921.45; he disregarded "federal guidelines, failure to comply with well

established standards not to disturb the natural way of order for clear investigation";
he failed to maintain access to the "prea" line for contact with family"; and he was
"taking approved liberties to enforce punishment, clear cruel and unusual
punishment." (*Id.* at 43.)  In his seventeenth claim, Plaintiff alleges that Brandon
Deskins committed perjury at Plaintiff's trial while acting in his official capacity.  He
also appears to allege that Deskins violated Sections 2913.42, 2921.32, 2921.44,
2921.45, and 2923.32 of the Ohio Revised Code.  (*Id.* at 44.)

Although not included in his seventeen claims, Plaintiff alleges in his
"Memorandum" that in 2006, Ward Barentine, Elizabeth Scott, Judge A.J. Wagner,
Detective Ward, Angie Walton, Devon Schultz, and Brandon Deskins "all collectively
together" committed perjury, "created false laws that do not exist," falsified
government files, and "purposely set up an innocent man."  He asserts that this
conduct violates "Ohio's criminal codes."  (*Id.* at 4.)

## DISCUSSION

By separate order, the Court granted this *pro se* plaintiff leave to proceed *in
forma pauperis* pursuant to 28 U.S.C. § 1915.

*Pro se* pleadings are liberally construed.  *Boag v. MacDougall*, 454 U.S. 364,
365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The district
court, however, is required to dismiss an *in forma pauperis* action under 28 U.S.C.
§ 1915(e) if it fails to state a claim on which relief may be granted or if it lacks an
arguable basis in law or fact.  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989); *Lawler
v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99
F.3d 194, 197 (6th Cir. 1996).  An action has no arguable basis in law where a

7

defendant is immune from suit or where a plaintiff claims a violation of a legal interest that clearly does not exist. *Neitzke*, 490 U.S. at 327. Additionally, an action has no arguable factual basis where the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *see also Lawler*, 898 F.2d at 1199.

When determining whether a plaintiff has stated a claim on which relief can be granted, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Although a complaint need not contain detailed factual allegations, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Nor must the Court accept as true factual allegations that are "fantastic or delusional." *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Explaining "plausibility," the Supreme Court stated that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678.   Further, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).   This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## I.    Pre-2019 Claims

The majority of Plaintiff's complaint concerns conduct surrounding his arrest, trial, and conviction in 2006, as well as his incarceration in the Southern Ohio Correctional Facility ("SOCF") in 2011.   To the extent Plaintiff attempts to re-litigate those claims, he is barred from doing so.

Plaintiff outlines the purported misconduct in his Memorandum, beginning with 2006 and continuing to 2020.   Previously, the Court addressed the claims from before 2019.   In *Dixon I*, Plaintiff challenged his arrest, prosecution, trial, conviction, and sentence.   He also alleged that he was stabbed and assaulted by other inmates, and he claimed that Defendants did not protect him from the assault.   The Southern District of Ohio held that Plaintiff failed to state a cognizable claim for relief to the extent he alleged that the defendants violated his constitutional rights concerning his arrest, prosecution, and conviction on criminal charges in Ohio because Plaintiff failed to demonstrate that the decision resulting in his confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a State tribunal, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254.   The Court dismissed all of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e), except his claim for failure to protect.   Ultimately, that claim was dismissed

without prejudice for failure to exhaust administrative remedies.  *See Dixon I*, No. 1:12 CV 294.

In *Dixon II*, Plaintiff filed a second suit based on many of the facts asserted in his first suit:  he challenged his arrest, prosecution, trial, conviction, and sentence; he asserted he was stabbed and assaulted by other inmates; and he claimed that prison officials should have known what was happening in the prison and failed to protect him from the assault.  Also, he claimed that he was denied access to the courts; his attorney "botched" his habeas petition in 2011; he was denied an effective grievance procedure; he was denied medical care; he was forced to sign a statement affirming his gang affiliations as part of a deal he made with the FBI; and trial witnesses committed perjury.  The *Dixon II* Court held that, to the extent Plaintiff challenged his 2006 conviction, that claim is not cognizable in a civil rights action and that Plaintiff otherwise failed to state a cognizable claim.  The Court dismissed all of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e).  *See Dixon II*, No. 3:15 CV 1999.

In *Dixon III*, Plaintiff once again filed suit asserting many of the same facts and allegations previously asserted, including wrongful profiling as a gang member, which the Court determined res judicata barred.  The Court in *Dixon III* also dismissed Plaintiff's purported claims against the RIB for an alleged denial of due process at a disciplinary hearing and his claim that he was denied an effective grievance procedure.  *See Dixon III*, No. 3:17 CV 1476.

Because Plaintiff's claims concerning his arrest, conviction, trial, sentence, and incarceration before 2019 have been repeatedly addressed in prior Court opinions and

have occurred more than two years before the filing of this action, those claims are dismissed as duplicative and barred by res judicata.  *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (finding the district court may *sua sponte* dismiss a complaint under Section 1915(e)(2) as time-barred where, as here, the defect is obvious on the face of the pleading); *Browning v. Pendleton*, 869 F.2d 989, 991 (6th Cir. 1989) (Ohio's two-year statute of limitations for bodily injury applies to Section 1983 claims).

Therefore, the Court dismisses Plaintiff's purported civil rights claims against Ms. Hunt, Ward, Deskins, Walton, Schultz, Norris, Gillum, Friend, the RIB, the ODRC Director, Barentine, Scott, and Wagner, and any other defendants, to the extent Plaintiff alleges they violated his constitutional rights concerning events occurring before 2019.

## II.  Claims from 2019–2020

Plaintiff's more recent allegations concern Judge Helmick's opinion in *Dixon III*, issued on January 28, 2020, and Hamilton County officials' purported decision not to file criminal charges against Ms. Hunt.

Plaintiff states that he is bringing this action under 42 U.S.C. § 1983.  To establish a claim under Section 1983, Plaintiff must show that (1) he was deprived of a right secured by the Constitution or the laws of the United States, and (2) the deprivation was caused by a person acting under color of State law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Simescu v. Emmet County Dep't of Soc. Servs.*, 942 F.2d 372, 374 (6th Cir. 1991).  Section 1983 "is not itself a source of substantive rights" but merely provides "a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979).  The first step in such a claim is to

identify the specific constitutional right allegedly infringed.  *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Baker*, 443 U.S. at 140.

As best the Court can discern, Plaintiff appears to allege the following: (1) Judge Helmick violated his "civil rights" when he issued his January 2020 opinion, which allegedly included "false" information that negatively affected him in prison; (2) Investigator Elder, Investigator Brown, Uma Hernandez, Warden Bowerman, and Warden May failed to protect him from other inmates after Judge Helmick's opinion was released; and (3) the Hamilton County Clerk and judge violated Plaintiff's civil rights by failing to file criminal charges against Ms. Hunt.  Plaintiff also appears to allege that Defendants' actions caused the death of his mother and nearly all of Defendants should be criminally charged.

### II.A.  Judge Helmick

To the extent Plaintiff alleges claims against Judge Helmick under 42 U.S.C. § 1983, these claims fail.  Plaintiff's complaint fails to identify a constitutional right allegedly infringed.  Instead, his complaint consists only of bare, conclusory assertions, providing no facts on which a finder of fact could find a civil rights violation.  He generically states that his civil rights were violated and concludes that the misconduct occurred "because of Judge Helmick's opinion."  Therefore, Plaintiff's complaint is little more than a "defendant-unlawfully-harmed-me accusation" and must be dismissed.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

To the extent Plaintiff claims Judge Helmick's opinion caused his mother's death, he fails to state a claim.  Plaintiff's allegation—that his mother died because

of the "stress and fear of everything" that occurred as a result of Judge Helmick issuing an opinion stating Plaintiff was an informant lacks factual or legal grounding. *Denton*, 504 U.S. at 33.

Even if Plaintiff alleged sufficient claims against Judge Helmick, he is immune from suit. Judges—State and federal—are "absolutely immune from liability for their judicial acts." *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983) (citations omitted). This absolute "judicial immunity is an immunity from suit, not just from ultimate assessment of damages" and cannot be "overcome by allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Whether an act is "judicial" depends on the "nature of the act itself." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Relevant considerations for this determination include whether the act was "a function normally performed by a judge" and whether the parties "dealt with the judge in his judicial capacity." *Id.*

Here, Plaintiff's allegations concerning Judge Helmick relate solely to the opinion Judge Helmick issued in 2020. Because writing and issuing opinions are judicial functions, absolute judicial immunity applies to bar this claim. Therefore, Plaintiff fails to state a claim against Judge Helmick on which relief may be granted.

### II.B.  Elder, Brown, Hernandez, Bowerman, and May

Plaintiff also appears to allege that, after Judge Helmick issued his January 2020 opinion, other inmates called him a "snitch," flooded his cell with "shit water," and began banging on his cell wall "24 hours a day." He claims that the prison staff "moved Dixon back to live around people who set him up . . . [or] want him dead" and

13

he is not safe.  (ECF No. 1, at 14–15.)  Although Plaintiff does not cite a constitutional basis for this claim, the Court will liberally construe the claim as one for failure to protect against Elder, Brown, Hernandez, Bowerman, and May arising under the Eighth Amendment.

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotation omitted); *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.

To state an Eighth Amendment claim for failure to protect, Plaintiff must show that prison officials acted with deliberate indifference to a substantial risk of serious harm.  *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 834) (further citation omitted).  Plaintiff must show:  (1) he was incarcerated under conditions that posed a serious risk of harm; and (2) the official knew of this serious risk but failed to take reasonable steps to abate it.  *Farmer*, 511 U.S. at 834, 827.

Here, Plaintiff fails to allege facts suggesting Defendants perceived a risk to his safety and consciously disregarded that risk. Rather, Plaintiff's complaint contains disjointed, conclusory statements and phrases attempting to connect Judge Helmick's opinion with other inmates' purported harassment of Plaintiff and "staff's" alleged "failure to protect."  For example, Plaintiff alleges that "Dixon reported a threat, the named staff failed to protect, used informants to continue the

investigation, gained knowledge, . . . staff continued on, to force Dixon . . . into a life-threatening situation, failure to protect."  (ECF No. 1, at 39.)  Also, he states that "Warden May is taking Dixon's rights."  (*Id.* at 14.)  These allegations are vague and conclusory and are dismissed as nothing more than a "defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Moreover, although Plaintiff identifies Elder, Brown, Hernandez, Bowerman, and May as Defendants, he fails to attribute specific conduct to a particular defendant.  Instead, Plaintiff generally claims that "*staff* moved him to live around people who set him up" and "*they* tried to force Dixon to live with people who want him dead."  (*Id.* at 14–15 (emphasis added).)  Further, Plaintiff states that "it was due to behavior of named people, Elder, Hobbs, Brown, Hernandez, and Bowerman."  (*Id.* at 39.)  A basic rule of pleading requires that a plaintiff attribute specific factual allegations to particular defendants.  *Twombly*, 550 U.S. at 555 (holding that to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where, as here, individuals are named as defendants without allegations of discernible specific conduct relating to Plaintiff's claims, the complaint is subject to dismissal even under the liberal construction afforded *pro se* complaints.  *See Gilmore v. Corrections Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983.").  Therefore, Plaintiff fails to allege an Eighth Amendment claim.  To the extent Plaintiff claims these Defendants, or any others, caused his mother's death, he fails

to state a claim.  Such allegations lack legal and factual grounding.  *Denton*, 504 U.S. at 33.

## II.C.  Hamilton County Clerk and Judge

Plaintiff alleges that the Hamilton County Clerk and a Hamilton County judge violated his civil rights by failing to file criminal charges against Ms. Hunt for her alleged role in his arrest and conviction.  Plaintiff also appears to claim that nearly all of the named Defendants should be criminally charged for their claimed roles in his arrest, trial, conviction, confinement, and appeals process.  Throughout the complaint, Plaintiff claims that Defendants have violated, in one variation or another, the following Ohio statutes:  Section 2913.42 of the Ohio Revised Code (Tampering with Records); Section 2921.32 (Obstruction); Section 2921.44 (Dereliction of Duty); Section 2921.45 (Interfering with Civil Rights); and Section 2923.32 (Engaging in Pattern of Corrupt Activity).

To the extent Plaintiff claims Defendants' actions constitute criminal conduct and he seeks criminal charges in federal court, his claim fails.  A private citizen "has no authority to initiate a federal criminal prosecution [against] defendants for their alleged unlawful acts."  *Williams v. Luttrell*, 99 F. App'x 705, 707 (6th Cir. 2004) (citing, among authority, *Diamond v. Charles*, 476 U.S. 54, 64–65 (1986)); *Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir. 2001) ("A private citizen has no authority to initiate a federal criminal prosecution; that power is vested exclusively in the executive branch.") (citing *U.S. v. Nixon*, 418 U.S. 683, 693 (1974)).  And in the absence of a private right of action, Plaintiff lacks standing to commence a federal

16

criminal action against Defendants. *See Profit v. City of Shaker Hts.*, No. 1:18CV1223, 2019 U.S. Dist. LEXIS 10873, at *5 (N.D. Ohio Jan. 23, 2019); *see also Poole v. CitiMortgage, Inc.*, No. 14-CV-10512, 2014 U.S. Dist. LEXIS 135488, 2014 WL 4772177, at *5 (E.D. Mich. Sept. 24, 2014) (a private citizen lacks standing to initiate criminal proceedings) (citing, among authority, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).  Therefore, Plaintiff fails to state a claim on which relief may be granted to the extent he seeks federal criminal charges.

Moreover, even if Plaintiff had standing, Plaintiff cannot show the Hamilton County Clerk or judge violated a constitutional right.  "[T]here is no 'constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime.'"  *White v. City of Toledo*, 217 F.Supp.2d 838, 841 (N.D. Ohio 2002) (quoting *Doe v. Mayor & City Council of Pocomoke Cnty*, 745 F. Supp. 1137, 1138 (D. Md. 1990)); *see also Douglas v. City of Cleveland*, No. 1:12 CV 1145, 2012 U.S. Dist. LEXIS 143919, at *12 (N.D. Ohio Oct. 4, 2012).  Such "discretionary public duties . . . are enforced by public opinion, policy, and the ballot," not litigation against individual officers and their civil employers.  *White*, 217 F. Supp. 2d at 841; *see also Fulson v. City of Columbus*, 801 F. Supp. 1, 6 (S.D. Ohio 1992) ("A public official charged with the duty to investigate or prosecute a crime does not owe that duty to any one member of the public, and thus no one member of the public has a right to compel a public official to act").  Therefore, Plaintiff's claim that Defendants infringed on his civil rights by failing to prosecute Ms. Hunt fails to state a cognizable claim on which relief may be granted.

To the extent Plaintiff alleges violation of the Ohio statutes, the Court declines to exercise supplemental jurisdiction over Plaintiff's State law claims.  Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction where the Court "has dismissed all claims over which it has original jurisdiction." The Sixth Circuit has held that "[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well."  *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (internal quotations omitted).

Therefore, the Court dismisses Plaintiff's claims that Defendants violated Sections 2913.42, 2921.32, 2921.44, 2921.45, and 2923.32 without prejudice.  *Bullock v. City of Covington*, 698 F. App'x 305, 307 (6th Cir. 2017) ("Normally, when a court declines to exercise supplemental jurisdiction, the court dismisses the claims without prejudice.") (citations omitted).

## CONCLUSION

For the foregoing reasons, the Court DISMISSES Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e) and without prejudice to Plaintiff filing his State-law claims against these Defendants in State court.  Plaintiff's Motion for Appointment of Counsel (ECF No. 3; ECF No. 5) and Motion for Name Change and Motion to Seal All Records (ECF No. 4) are denied.  Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that an appeal from this decision may not be taken in good faith.

**SO ORDERED.**

Dated:  October 15, 2021

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio